### DANIEL vs. MERCER, executor.

At the time of lending a sum of money, the lender took the note of the person for whose use the money was borrowed, including in the principal of the note interest at a conventional rate which was usurious. A third person present applied for the loan and procured it to be made, and it was made in consequence of his parol promise to see the whole amount paid, he declining to sign the note. The lender relied upon this promise, and after the note matured, he brought suit against the promissor upon an account for a sum as principal equal to the whole face of the note, including the conventional interest :

*Held,* 1. That the maker of the note was the primary debtor, and that the promise of the other was collateral.

*Held,* 2. That parting with the money pursuant to the contract of lending was not itself the performance or part performance contemplated by the Code as sufficient to render the promise obligatory without writing.

Statute of frauds.   Contracts.   Before Judge HALL. Newton Superior Court.   September Term, 1878.

Whilst this case was pending in this court the defendant in error died, and his executor was made a party in his stead.   The facts will be found in the opinion.

E. F. EDWARDS; J. J. FLOYD, for plaintiff in error.

E. WOMACK, for defendant.

BLECKLEY, Justice.

Mercer sued Beaton Daniel in a justice's court, on an account, annexing a bill of particulars, as follows : " To fifty-seven dollars and fifty cents, besides interest, which he, the said Beaton Daniel procured from the said Mercer about the 1st January, 1876, to become due on the 25th day of December thereafter, and for which he became liable at the time, $57.50." The defendant pleaded that " he did not undertake and promise as he the said plaintiff hath alleged." The justice of the peace gave judgment in

favor of the plaintiff for $57.50, with interest from the 25th of December, 1876, and the defendant entered an appeal to the superior court.   On the trial in the superior court, the jury found for the plaintiff fifty-seven dollars and fifty cents principal, and seven dollars interest.   The defendant moved for a new trial, because the verdict was contrary to law and evidence, and because the court erred in charging the jury, that if they believed from the evidence, that although the money sued for in this action was loaned to Stephen Daniel and his note taken for the same, yet if they believed from the evidence that the loan was upon the credit of a promise by the defendant, Beaton Daniel, the statute of frauds did not relieve the defendant.   In verify-ing the grounds of the motion, the presiding judge modi-fied this statement of the charge, saying that the charge as given was as follows: " If Beaton Daniel procured the loan by Levi Mercer to Stephen Daniel, by promising to become responsible for it, then he would be treated as an original undertaker, although he signed no note for the amount."   The court having denied the motion for a new trial, that denial is the error complained of.

The plaintiff below was sworn as a witness in his own behalf.   His evidence was substantially as follows: " Ste-phen and Beaton Daniel came to my house sometime in 1876, in the spring I think, and Beaton Daniel said he wanted to borrow money for his brother Stephen, and that they were willing to pay twenty per cent. for the use of it, but that he, Beaton, would not sign the note with Stephen, but would see the money paid.   I replied that I did not ask twenty per cent., but with his promise to see the money paid, I would let them have it at fifteen per cent. per annum, and Julia Mercer wrote a note for fifty dollars with the interest at fifteen per cent. in the face, which sum, fifty-seven and a half dollars, was the amount for which the note was given.   Beaton Daniel borrowed the money for Stephen Daniel, and Beaton Daniel became responsible to me.   The note has not been paid.   At night, on the 10th

of January, 1879, both of them were at my house, and Beaton Daniel asked me where the note was. I told him I had lost it. He said I must find it. I told him I could not, but would give him a showing against it if he would pay it. He refused. I then asked him if he did not get the money, and if so, whether he had paid it. He said he did borrow fifty-seven dollars and a half and had not paid it. His brother made the same admission. The money was borrowed, I think, to enable Stephen to make a crop. It was understood that the money was gotten for him. I did not say, on the first trial, that I wanted Beaton Daniel to sign the note; I relied on his verbal indorsement of the note." There was other evidence, but none going directly to the terms and circumstances of the contract, that was more favorable to the plaintiff than his own. We propose to determine the case as the plaintiff himself made it by his own testimony.

1. The question is, whether the promise of Beaton Daniel, the defendant below, was original or collateral. In the argument, no point was made as to the sufficiency of the plea to raise that question. We, therefore, make no ruling upon any point of pleading, but go directly to the substance of the contract as disclosed by the evidence which we have quoted above. Three possibilities are exhaustive of the evidence in any and every view that can be taken of it. The first is, that the debt was joint; the second is, that it was the several debt of Beaton Daniel, the defendant; the third is, that it was the several debt of Stephen Daniel, the person for whose use the money was borrowed, and whose note was taken for it, together with the interest for one year, at the agreed rate per cent., which rate was usurious. Acts of 1875, p. 105. Was the debt joint? The creditor did not so treat it, for he left it to stand on account as to one of the promissors, and on a note by the other. Was it the debt of Beaton Daniel, the defendant? Nominally Beaton Daniel borrowed the money, and, without more, that would have made the debt his; but he and his

brother Stephen were both present, and the money was lent for the latter's use, and the latter gave his note for it. The consideration for the note moved to Stephen, and it does not appear that Beaton was interested in that consideration. If, therefore, they had both signed the note, Stephen would not have been surety for Beaton, but Beaton would have been surety for Stephen. Code, §2148 *et seq.* If the creditor lent the money to Beaton, and Beaton lent it to Stephen, then should the note of Stephen have been payable to Beaton, but it was payable directly to the creditor. If the creditor gave no part of the credit to Stephen, why did he take Stephen's note? The form of words used by the parties in the transaction is not to control. How was it in substance when concluded? 58 *Ga.*, 56 (2, 3). What was *said* is of less consequence than what was *done.* It is certain that the note of Stephen was in fact taken, not only for the fifty dollars loaned, but for the interest at fifteen per cent. per annum, which was three per cent. more than lawful conventional interest. It is equally certain that this suit was brought against Beaton for the exact amount of the note, and not for the principal of the loan. As we understand the testimony of the plaintiff, he relied on Beaton Daniel's "verbal indorsement of the note," and he has sued accordingly. He has not sued for a loan of fifty dollars, principal, but for fifty-seven dollars and fifty cents, which is the amount of the note. There is no suggestion anywhere in the evidence that he lent more than fifty dollars. As matter of account between the plaintiff and Beaton Daniel, the debt would be but fifty dollars principal, but the suit is for the agreed principal of the note which was given by Stephen Daniel. It is, therefore, clear that the suit is for the amount of the note, and not for the amount of the actual loan.

Was the debt sued for the debt of Stephen Daniel? What has been said above is pertinent to this question. Stephen received the consideration, and Beaton was *to see* the debt paid. Who was to pay it? The person who gave

the note, and Beaton was to *see it paid*—that is, he was surety or guarantor for its payment.   Were Stephen sued on the note what possible defense could he make except on the ground of usury ?   A recovery against him would be inevitable.   And were he to pay off the note or a judgment founded upon it, such. payment would give him no cause of action against Beaton.   Why ?   For the conclusive reason that the payment would be the discharge of his own debt.

The suggestion that under the Code, §1951, a collateral promise is obligatory without writing, where there has been performance or part performance on one side, and that parting with the money in making the loan was such performance or part performance, is answered by the case of *McGaughey vs. Latham*, last term.

To see how the main question stands on authority, consult Throop on Verbal Agreements, and DeColyer on Guaranty.

Judgment reversed.